REED, Judge
(dissenting).
I dissent from the decision of the majority.
This is an appeal from a final judgment rendered by the Circuit Court of Palm Beach County, Florida, on 24 August 1967. The appellant, National Indemnity Company, was the defendant in the trial court. The appellee, Guy H. Donald, was the plaintiff in the trial court. Hereafter these parties will be referred to as “National Indemnity” and “Mr. Donald”, respectively. The suit was for the recovery of an amount by which a final judgment rendered in a prior suit exceeded the limits of liability on an insurance policy issued by National Indemnity to Mr. Donald which covered the liability of Mr. Donald for the damages which were involved in the prior suit.
The prior suit was filed in the Circuit Court for Palm Beach County on 12 October 1964 by one Betty T. O’Hern as plaintiff against Mr. Donald, as a defendant. The complaint asserted a cause of action for the wrongful death of Betty T. O’Hern’s husband who was allegedly killed on 19 September 1964 by the negligence of an employee of Mr. Donald in the operation of a truck on the Florida State Turnpike. The jury returned a verdict in the wrongful death action against Mr. Donald in the amount of $125,000.00. This was later reduced by a remittitur to $110,000.00 and judgment *901 was entered for that amount. National Indemnity paid $100,000.00 on the judgment which was the amount of the limits of the liability policy. Mr. Donald then filed the present suit for the excess.
The complaint in the present case is divided into two counts. Both counts allege the facts outlined above and that National Indemnity, pursuant to its obligations under the insurance contract, took over the defense of the wrongful death action by Betty T. O’Hern. Both counts allege that prior to the trial of the wrongful death action a reasonable offer of settlement within the policy limits was made by the widow and refused by National Indemnity. Count I of the complaint charges that National Indemnity was negligent in refusing to accept the offer of settlement. Count II charges that National Indemnity breached its contract with Mr. Donald by acting in bad faith in refusing to settle within the policy limits. No other issues of negligence or breach of contract were raised by the complaint.
The count dealing with negligence was not submitted to the jury. The jury returned a verdict in favor of Mr. Donald in the amount of $10,000.00. Following the rendition of the verdict,.National Indemnity renewed a motion for a directed verdict which it had made at the close of the evidence and coupled with it a motion for a new trial. Both motions were denied, and a final judgment in the amount of $10,000.00 was rendered against the defendant, National Indemnity. It is from this judgment that the present appeal has been taken.
The controlling issue is whether or not there is sufficient evidence to support the verdict against National Indemnity for its alleged failure to act in good faith in rejecting a settlement offer made by Betty T. O’Hern in the wrongful death suit.
The insurance contract between the plaintiff and the defendant contained the following pertinent provisions:
“With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the company shall:
(a) defend any suit against the insured alleging such injury * * * but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient. * * * ” (Emphasis added.)
Under the terms of the insurance contract, National Indemnity had the right to elect to settle a claim or to try it in a proper forum. Nevertheless, because of the obligation imposed on the insurer by the contract to defend the insured and also because of the restriction which the contract places on the insured’s right to settle claims, there is an obligation on the insurer which is implied by the express provisions of the contract to exercise good faith toward the insured in acting upon an offer of settlement within the policy limits. Auto Mut. Indemnity Co. v. Shaw, 1938, 134 Fla. 815, 184 So. 852; American Fire And Casualty Company v. Davis, Fla.App.1962, 146 So.2d 615; and McNulty v. Nationwide Mutual Insurance Company, Fla.App.1969, 221 So.2d 208.
The obligation on the insurer to act in good faith on a settlement offer within the limits of the policy encompasses a duty to place itself in a position to act intelligently. This means that the company must make a diligent effort to ascertain the facts and the law relating to the claim involved. It need not exhaust all sources of information, but it must use that degree of care and diligence in the investigation of the facts that would be exercised by the great majority of persons in the same or similar circumstances as the insurer, Auto Mut. Indemnity Co. v. Shaw, supra. In addition, the obligation of good faith in connection with accepting or rejecting a settlement offer requires the insurer to weigh all pertinent probabilities. This includes the probability, if any, of an *902 excess verdict against the insured. After doing so, the insurer must then make a fair, honest, and intelligent decision with respect to the offer of settlement. As the court said in Auto Mut. Indemnity Co. v. Shaw, supra, the decision of the insurance company not to settle,
“ * * should be an honest decision. It should be the result of the weighing of probabilities in a fair and honest way. If upon such consideration it decides that its interest will be better promoted by contesting than by settling the claim, the insured must abide by whatever consequences flow from that decision. He has so agreed. * *’ ”
It follows from the foregoing that in an action to recover damages based upon an alleged failure of an insurance company to act in good faith in rejecting an offer of settlement within the policy limits, there must be some proof as to what the probabilities of an excess verdict were at the time the offer of settlement was rejected as those probabilities appeared or would have appeared to the insurer had it exercised the degree of care imposed upon it by the duty of good faith. Unless an excess verdict was in fact foreseen by the insurer as a probability or would have been foreseen as a probability by an insurer exercising the required degree of care, there can be no breach of contract in the rejection of a settlement offer where the insurance policy expressly gives the insurer the right to make such settlement of claims as it deems expedient.
The record indicates that National Indemnity received an offer from the plaintiff in the wrongful death case just before the trial started to settle for $90,000.-00. This offer was renewed by the widow’s attorney after the jury had retired to consider its verdict. The offers were rejected.
The facts in evidence before the trial court indicate that the plaintiff in the wrongful death action lost her husband on 19 September 1964. At that time he was thirty-two years of age and had six children and was earning $104.05 per week in his employment as a filling station attendant. One of the six children was a new-born baby. The record does contain evidence from which the jury could readily have inferred that liability in the wrongful death case was probable, but I do not believe that the sketchy evidence in the present record relating to the damages of Mrs. O’Hern justified an inference by the jury that the insurer, National Indemnity, either in fact did or should have, in the exercise of that degree of care imposed upon it by the obligation of good faith, contemplated as probable, at the time the settlement offers were rejected, a verdict in excess of $100,000.00.
During the course of the wrongful death action, Mr. Donald secured for his own benefit an independent attorney who had represented him on other occasions in connection with personal matters. This attorney testified in the present case that he had felt for an unspecified period of time before the wrongful death case was filed that the $100,000.00 limit of liability in Mr. Donald’s insurance policy was adequate for the protection of his client. The attorney, however, indicated concern over the case and made a demand on National Indemnity that it be settled within the limits of the policy. This evidence falls far short of proof that a verdict in excess of the policy limits was a reasonable probability. In fact it supports a contrary conclusion.
National Indemnity evaluated Mrs. O’Hern’s wrongful death claim as worth $75,000.00 for settlement purposes. An offer in this amount was made to her as a counter-offer in response to her offer of $90,000.00. Mr. Donald contends that the counter-offer was not an intelligent evaluation of the claim because National Indemnity’s claims examiner testified that he did not attempt to evaluate each separate element of Mrs. O’Hern’s claim, *903 but viewed her claim as an entirety. I do not believe that this is evidence of negligence or bad faith in evaluating the claim. In the first place, the recoverable elements in a widow’s wrongful death action are extremely difficult to evaluate as separate items. In the second place, the testimony of the claims examiner clearly indicated that the evaluation of $75,000.00 was not based solely on his own mental processes and views with respect to the value of the claim, but was also based upon the advice of the attorney who was representing the insurer in connection with the defense of the claim.
Mr. Donald’s brief calls to this court’s attention the fact that National Indemnity, in negotiating with Mrs. O’Hern, initially offered Mrs. O’Hern $25,000.00 to settle the wrongful death claim and thereafter increased the offer to $35,000.00, then $50,000.00 and ultimately $75,000.00. He points to these facts as evidence of bad faith. I do not consider this as competent substantial evidence of bad faith. The insurance carrier had the right under the insurance contract to settle the case for as little as possible. Mr. Donald also points out that National Indemnity did not depose the widow or submit interrogatories to her prior to the trial of the wrongful death suit. There was, however, no showing that National Indemnity had not secured the pertinent information with respect to the widow and her deceased husband and their marital relations from other sources such as friends, neighbors, family, etc.
My review of the record convinces me that the verdict in the present action rests on nothing more than the fact that an excess verdict was rendered in the wrongful death action. This of course is not the criterion for liability. By affirming the judgment of the trial court, I believe that we are failing to apply the principles enunciated in Auto Mut. Indemnity Co. v. Shaw, supra. I would reverse the judgment and grant the defendant’s post-trial motion for judgment.